All rise. The Illinois Telecoil Third Division is now in session. The Honorable Justice LeRoy A. Martin, Jr. is presiding. Good morning. Please be seated. Poltek v. City of Chicago Councils, would you please rise and identify yourself. J.C. Zola for the whites. I'm sorry. Do you hear my voices? I could not hear your voices. So, if you just say who you are again with that lovely smile that you both have, so we can hear you. All right. J.C. Zola for whites. Thank you. Alexander Weiss for the blues. Thank you. You remember both to keep your voices up because there is no amplification here in the courtroom. The microphones are for recording purposes and not for amplification, so just keep that in mind. Our intent is to give you 15 minutes each. We may extend that at our discretion, particularly considering there may be questions that you may be peppered with and we'll take that into consideration. With that, since you are the movement, would you like to reserve some time for rebuttals? Yes, please. And how much time would you like? All right. Very good. All right. Be seated, please. All right. With that, we shall begin. Good morning. This case presents the purest threshold legal question under Illinois law, subject matter jurisdiction. Plaintiff's complaint cited the jurisdictional limitation in 9-76-230D of the Chicago Municipal Code. Plaintiff's also mentioned in the complaint that that was an additional reason for their jurisdictional challenge. And the parties briefed that issue in full on two occasions in the trial court before summary judgment. Those are indisputable facts. But even if what I just said was not true, the plaintiffs should still prevail in this case. Illinois takes subject matter jurisdiction very seriously. Subject matter jurisdiction cannot be waived and can be raised at any time in any court, either directly or collateral. In fact, even if the parties did not raise subject matter jurisdiction at all in this case, this court has an independent duty to vacate judgments entered without subject matter jurisdiction. So did the circuit court abuse its discretion here in not allowing the amendment? On the amendment, yes, there was abuse of discretion. And I can get into that in more detail. Our primary concern is that we didn't need an amendment. We literally cited municipal law as an additional basis for our jurisdictional challenge in our complaint. It's been in our complaint since the day we filed it seven years ago. But their argument is that it was ancillary. It wasn't really part of your argument down at the circuit court. That's demonstrably not true. We briefed that issue in full. There's dozens of pages of briefs that we cite to in our current briefs. We cite to the record where we literally had dozens of pages of briefing. The jurisdictional effect of 9-76-230D of the municipal code. Those are the briefs. I can get the exact cites for you, maybe in my rebuttal. But we do cite to those. There was a summary judgment briefing in which we addressed this issue. And then after Camacho came out, the trial court asked for a supplemental briefing on the impact of Camacho on the case. And the parties submitted, I believe, three additional briefs, all of which focused solely on 9-76-230D. But as I was saying, subject matter jurisdiction can be raised at any time. And that's exactly what the Supreme Court did in Camacho. In Camacho, the Supreme Court found Section 3-5 of the Joliet Ordinance divested the administrative hearing offices of jurisdiction. Even though the parties never cited that provision of the ordinance and never briefed it. In fact, the plaintiffs in Camacho never cited 3-5 in their complaint. The Camacho complaint is part of the record in our case, and we cite it in our briefs. Section 3-5 is not mentioned. The plaintiffs in Camacho never argued in the trial court that Section 3-5 was a jurisdiction limitation. They never made that argument in the appellate court. They didn't even make that argument in the Supreme Court. But because Illinois takes subject matter jurisdiction so seriously, the Supreme Court reached the issue anyways and vacated those void judgments. And that's what should be done here. But what about the fact that Camacho is factually distinguishable from this case, and it also involves a completely different ordinance? Well, the impact of the ordinance is the same. Both ordinances say if there is a reportable violation, they must be adjudicated in circuit court. The Joliet Ordinance says Will County Courthouse. The Chicago Ordinance says a court of competent jurisdiction. But in substance, they're the same. The impact is the same. Reportable violations, reportable traffic offenses must be adjudicated in traffic court. That's what Camacho, the Joliet Ordinance says. That's what the City of Chicago Ordinance says. And again, we don't need, we didn't need to leave to amend the complaint because we did allege this in our complaint. Paragraph 101, we literally block quoted verbatim the entire Section D of 9-76-230. And in the following paragraph, we said, this is an additional reason for the lack of jurisdiction. And in fact, we have an entire section in our complaint, an entire section that was entitled, don't allow jurisdiction over plaintiff's alleged ordinance violations. That's Section D of our complaint. And in that section, we explain, plaintiffs explain their basis for the jurisdictional challenge, which was based both on Illinois law, which was set forth in paragraph 105, and municipal law, which was set forth in paragraph 107. So the trial court was wrong. The trial court was just wrong to say that this municipal law was not part of our complaint. But even if we didn't cite 9-76-230-D in our complaint, even if it was never cited or mentioned in the complaint, that only provides an additional reason for DOA's lack of jurisdiction. It's not an entirely new claim. Plaintiff's theory of liability in this case is and has always been that DOA lacked jurisdiction and that therefore the judgments entered against the plaintiffs were void. Our causes of action have never changed. We allege account for declaratory judgment and unjust enrichment. So we find it odd that the city keeps saying in their briefs that we only brought claims under Division 2.1 of Illinois law and we failed to bring a claim under municipal law. We didn't bring a claim under either of those laws. Neither of those laws provide a private right of action. Our claims have always been based on void judgments for lack of subject matter jurisdiction through the vehicle of a declaratory judgment action and unjust enrichment. And we cite, and I refer to the cases on pages 29-31 of our opening brief, the Flaciano case, BCSP-330-North Wabash, and Mentastana, each of which allowed a plaintiff to raise new and additional bases for their claims, even though those bases weren't alleged in the complaint. So can you explain to us how did the circuit court come to the determination that you didn't complete the code? Well, the trial court said that the focus of our complaint was on state law. But we did, in fact, allege the municipal code as an additional basis and simply because maybe it didn't consume as many paragraphs as our state law basis, there's no reason to say that we can't pursue that argument. That's not how Illinois plaining standards work. If all we need to do is say a plain, concise statement, that's what we did. We literally cited the ordinance verbatim and said it was an additional reason. That's all we need to do. Now, the fact that we raised 70% of the complaint on state law versus 30% on municipal law, this isn't a balancing test of which allegations consume more paragraphs or prevail. All we need to do is make the allegation, and that's what we did. Counsel, if you would just assume that we think the judge is right on that basis. Give us your abuse of discretion argument. Certainly. The trial court denied me to amend on the grounds that there was prejudice. That's what the order said. She said it would be prejudicial to allow an amendment. But the trial court didn't explain what the prejudice was. And the law in Illinois, and we cite the cases in our brief, it's indisputable why. That delay in and of itself is not prejudice. The delay had to have caused or prevented the other party from presenting its defenses on the merits. And that simply did not happen here because the parties literally briefed this issue below, before summary judgment. On two occasions, they fully and comprehensively briefed this issue, and the city can't identify anything that they have not in their briefs, identify any defenses that they would prevent it from raising below. In fact, in their opening brief in this court, they say that they're going to describe, they promised this court that they're going to describe in their brief additional defenses that they had, quote, no occasion to raise below. But then they wanted to simply restate the very same arguments that they made in the trial court. So all their defenses were presented to the trial court. And that's where there was an abuse of discretion on the leave to amend issue because there was no much, there was no, the city was never prevented in any way, an amendment would have not prevented them in any way from presenting their defenses to 9-76-230D. And I will say we also cited, we requested in our opening brief that this court exercise its authority, if it deems necessary, under Rule 366 to allow an amendment on appeal. And we cite, I believe it was Johnson v. American Airlines, I believe is the name of the case in our brief, that said when there is an intervening Supreme Court decision, that provides the appellate court valid grounds to allow leave to amend on appeal. And the city didn't address that argument in their response. So even if there was an abuse of discretion by the trial court, this court is well within its right to allow leave to amend on appeal. And I do want to be very clear that we do not believe an amendment is necessary. We believe, and it's true, that our complaint talks about municipal law, you know, very clearly in our complaint as an additional reason for the jurisdictional challenge. I'm sorry, and you said paragraph 101, 105, 107. 107. That's where we set up the jurisdictional challenge. We cite the municipal law in 101, and then 105 says, as shown above, Illinois law strips Dole jurisdiction. And then in 107 we say, in addition, as stated above, municipal law is an additional reason for Dole's lack of jurisdiction. Did you cite the specific section in 107, or just the general language? What I said is basically a general summary of what we did cite. We didn't cite section division 2.1 of Illinois law, et cetera, but that was cited in the immediately preceding paragraph to those paragraphs. And I would like to address one last thing on our complaint, because the trial court also faulted us kind of on this point for not citing 9-76-230D in the body of counts 3 and 4. But if you look at counts 3 and 4, they're very sparse. They do incorporate, by reference to prior allegations, and they're very sparse. They're even somewhat conclusory, which, at least in my practice, has been the case when you allege counts in the complaint. But I'd also look at counts 1 and 2, because counts 1 and 2, even according to the city in their brief, if they admit that they do, counts 1 and 2 are based on section 1-2.12 of Illinois law. They say in their briefs, counts 1 and 2 are based on Illinois law, division 2.1. Well, section 1-2.1-2 is not referenced in all counts 1 and 2 either. We make no reference to that. And that's just normal practice when you incorporate, by reference, your prior allegations. I mean, we literally have, we literally incorporated section D of our complaint, which explained the jurisdictional basis of the right claims. And that was clear enough, and it certainly was clear enough for the parties to understand it was an issue, because we briefed it below. We fully briefed that argument below. I would briefly like to, well, we respectfully ask this court as well to revisit its prior ruling on similarity. As you know, we were up before this court a few years ago, and there was a ruling on similarity. And in that ruling, this court adopted a narrow interpretation of the term similar, because at that time, there was an appellate court decision called Katam Trucking, which held that section 1-2.1-2 was a limitation on home rule power. And in the reliance on Katam Trucking, it was in paragraph 51 of this court's prior decision, they felt that the city should have deference in the interpretation of similar and that this court should give it a narrow interpretation. The Camacho court never addressed this court's decision in the previous Politech decision. That is correct. They did not cite Politech in their decision. However, paragraph 51 of this court's prior ruling on similarity, that's where the similarity holding is, it literally cites the Katam Trucking. This court relied on Katam Trucking as a basis for its narrow interpretation of similar. And there is no doubt that Camacho overruled Katam Trucking. So the underpinning of this court's ruling on similarity back then has been completely upended. And back when this court first heard this case, there was not a lot of case law on the term similar. There was this case and Katam Trucking, and as far as I know, there has been no other precedent on similarity. But now we do have the highest court in the land has spoken on how similarity should be addressed in this context. So how do you address the issue of the law of the case doctor? Well, the law of the case doctor doesn't apply when there is an intervening Supreme Court case or an intervening decision that disrupts the prior decision. But the Supreme Court didn't address Politech, didn't address specifically what was in Politech, so doesn't the law of the case doctor apply here? Well, it shouldn't apply because, again, this court was relying on Katam Trucking. If you would go back on Westlaw to the Politech 1 decision and you read the holding in paragraph 51, there would be a Katam Trucking site in that case, and there would be a red flag on it that that was overruled. So the basis, the precedent that this court relied on has been overruled with respect to similarity. And in those situations, the law of the case doctor just doesn't apply. I'd also like to point out that in the last appeal, the city, they still do, they make a lot of, they take issue with the fact that someone could be violating the city of Chicago cell phone ordinance but be in compliance with Illinois law. And they felt that that incongruency somehow prevents them from being similar. But the same could be said in Camacho. The Joliet ordinance, we cite a legislative history in our briefs demonstrating that the Joliet ordinance, their weight and length truck limits, were intentionally more restrictive than the Illinois vehicle code. They literally said that in their legislative history. We want to make them more restrictive laws than what Illinois law provides. I mean, there's an 80,000-pound weight limit under the vehicle code. It's 24,000 pounds in Joliet. So someone who's driving an 80,000-pound truck on the Joliet road would be in full compliance with state law. But they would still be in violation of the Joliet ordinance. And in Camacho, that didn't matter. Those were still reported. Even though that violation technically didn't violate Illinois law, it was still deemed to be reported. And the same is true in this case. And I would refer to paragraph 49 of the Camacho decision. That's basically their holding on similarity where the gist of their holding is that if there's regulations on the same subject matter, the laws are similar. In that case, it was the length and weight of vehicles under the vehicle code versus the length and weight of vehicles under the Joliet ordinance. Obviously, there were substantial differences between those two laws, but the court still found similarity. And we would simply ask that this court at least revisit that issue and apply the standard support in paragraph 49 of the Camacho decision to this case a second time around. Counsel? Oh, okay. My last point would be on the implied preemption. If you administratively adjudicate a traffic offense, it's not going to be reported to the Secretary of State. And if there's no reports to the Secretary of State, the Secretary of State can't monitor statewide driver's licenses in Illinois and revoke or suspend them where appropriate. So there's no question that the administrative adjudication of reportable traffic offenses prevents the state from fulfilling its exclusive duty. And those are the exact types of situations where the Supreme Court of Illinois have found implied preemption. The city never addresses that problem. They talk about how they need to keep their roads safe and they need to regulate their roads, et cetera, but that misses the point. No one's saying the city can't pass their own speed limit or even pass their own cell phone ordinance. But what the city has no authority to do is to issue, suspend, or revoke statewide driver's licenses. That is a purely and exclusive state function that is completely upended when a municipality administratively adjudicates reportable traffic offenses. Thank you. Okay, thank you. City? Good morning, Your Honors, and may it please the Court. Plaintiffs violated the city's distracted driving ordinance by using their cell phones while driving. For six years, they argued that state law deprived the Department of Administrative Hearings of jurisdiction to adjudicate their offenses. Only later, after the Supreme Court's ruling in Camacho rendered their claims meritless, did plaintiffs attempt to state a claim under the city's municipal code. This Court should affirm the circuit court's ruling because plaintiff's complaint did not state a claim that the city's code divested DOA of jurisdiction. The circuit court properly exercised its discretion in denying plaintiff's motion to amend the complaint. The city has home rule authority to administratively adjudicate plaintiff's offenses, and the pre-2014 statute and the city ordinance are not similar. With respect to Section 5 of the party's briefs, which address whether plaintiffs can revive their mandamus counts, unless the Court has any questions, we rest on our brief. First, plaintiff's complaint does not state a claim that the city's municipal code divested the Department of Administrative Hearings of jurisdiction. Counts 3 and 4 make no reference to the Distracted Driving Ordinance, which I will refer to as 230D. Instead, they allege that the Department of Administrative Hearings, or DOA, lacked jurisdiction because plaintiff's offenses were reportable under Section 12.12 of the Illinois Municipal Code and Section 6204 of the Illinois Vehicle Code. For context, 12.12 creates a system of administrative adjudication that cities can use to adjudicate ordinance offenses. That system cannot be used to adjudicate traffic offenses that are reportable under Section 6204. Plaintiff's entire theory in this litigation was that Section 12.12 deprived DOA of jurisdiction because plaintiff's offenses were reportable under 6204. This theory is plainly spelled out in paragraphs 89 to 104 of their complaint. Plaintiffs only came up with their theory under Section 230D after the Supreme Court took up this precise issue in Camacho. At that point, it was obvious that if the Supreme Court found that 12.12 does not prevent a city from adjudicating reportable offenses, then plaintiff's existing claims would be rendered meritless. Only then did they attempt to wedge this new claim into their complaint. So wasn't that their right though? I mean, no one anticipated Camacho or what the result was going to be and then all of a sudden the Supreme Court comes out with the Camacho decision. So shouldn't they have had the opportunity to amend their complaint then and now what was created as a result of the Camacho decision? So two points in response, Your Honor. First, as you pointed out, the Camacho Code of Ordinances is entirely different than Chicago's Municipal Code. Juliet's Code said that a person may be issued a notice of violation notwithstanding any other provision of the Code. Separately, it said that a hearing officer has jurisdiction once a notice is filed. It does not say that a hearing officer has jurisdiction over all offenses in the Code. Conversely, the City's Municipal Code says that DOA has jurisdiction over all matters arising under the Code, quote, notwithstanding any other provision of the Code. This broad grant of jurisdiction was simply lacking in Juliet's Code. And secondly, Camacho didn't create a kind of bright line rule saying that any time there is, you know, reference to a City's Code, the City can now create a new claim. It didn't create a basis for a new claim in this case, in other words. Returning to the complaint, the complaint clearly contains no claim that 230d limits DOA's jurisdiction, and it could not have reasonably informed the City of such a claim. This complaint is over 200 paragraphs long. None of those paragraphs asserts that 230d is jurisdictional. And in five other counts of the complaint, plaintiffs did expressly state claims arising under the Municipal Code. For example, in count five, plaintiffs alleged that the City failed to adjudicate their offenses in the Vehicle Hearings Division, quote, as required by the Chicago Municipal Code. So clearly, they knew how to state a claim under the Code, and they chose not to do so in counts three and four. This is made all the more evident because plaintiffs spent six years arguing that state law, not City ordinance, limits DOA's jurisdiction. They did so in their motion for class certification, in response to the City's motion to dismiss, and in the first round of summary judgment briefings. Even in their prior appeal to this Court, they only argued that state law precludes the City from adjudicating these offenses. Ultimately, the purpose of a complaint is to reasonably inform a defendant of the claims that it will need to defend. Excuse me, I don't mean to interrupt you, but where is the prejudice here to the City? There's no additional discovery needed, right? This is just basically a question of law. So where is the prejudice to the City in terms of allowing the amendment? Yes, Your Honor. Well, as this Court has recognized, any time a plaintiff is given a second bite at the apple and a defendant is required to engage in additional litigation, that itself is prejudice. That case is Geisler v. Everest National Insurance Company. Here, plaintiff's claims were dead in the water after Camacho. They simply had no meritorious claims left after Camacho came out. Allowing them to inject this new theory that 230D is jurisdictional, kind of at the 11th hour, would have given them the opportunity to continue litigating this case and would have required the City to expend taxpayer dollars, time, resources, on defending an entirely new claim that simply has not been present for the first seven years of this litigation, which leads nicely into the fact that the Circuit Court did not abuse its discretion by denying plaintiff's motion to amend the complaint. The Court properly determined that the Loyola Academy factors weighed against allowing plaintiffs to amend. With respect to the first factor, the amendment would have been futile and would not have cured the complaint. 230D simply has nothing to do with Geisler's jurisdiction. It is merely a procedural command to Corporation Counsel to litigate reportable offenses in court. So, again, going to Camacho, how is their argument futile if it's allowed to proceed with the amendment? I'm not sure I understand your question. So, you said that to allow them to proceed would be futile, right? Yes. So, based on Camacho, you said it creates a different situation, right? So how is it futile to allow them to amend the complaint? I don't get that part. I see, Your Honor. 230D is not a viable claim because it's not jurisdictional. It's merely a directory command, and directory commands don't deprive Delaware of jurisdiction. So it would simply fail on its face. Whereas in Camacho, because there was no broad grant of jurisdiction to the Joliet Department of Administrative Hearings, that claim was not futile. Did that answer your question? I'm sorry. Okay, thank you. As I was mentioning a moment ago, Section 230D is simply a directory command to Corporation Counsel, and it is not mandatory. So noncompliance does not affect the validity of DOA's judgments. Procedural commands to government officials are presumed to be directory unless either the ordinance specifies consequence for noncompliance or noncompliance affects a right that the ordinance is designed to protect. Here, 230D does not specify any consequence for noncompliance, and plaintiffs have not been injured by having their offenses adjudicated at DOA rather than in court. They do not dispute that they violated the Distracted Driving Ordinance, so they would have been liable for the same fines regardless of which forum their citations were heard in. Turning to the second Loyola Academy factor, the city would have been prejudiced by the amendment, as we've already covered. Again, Camacho defeated the existing claims, and this would have given them a chance to essentially revive their lawsuit. The third factor asks whether the amendment was timely. Plainly, it was not. Plaintiffs waited seven years to move to amend their complaint, and they were clearly aware of a claim under 230D when they filed the complaint, so they could have raised it then or any time after. And the fourth factor, similarly, plaintiffs had previous opportunities to amend because they were aware of Section 230D. So all of the Loyola Academy factors weighed against them. What about their argument is that they don't even have to amend the complaint? Your Honor, that applies solely to questions of subject matter jurisdiction. This is not a true jurisdictional challenge. 230D has nothing to do with DOA's jurisdiction. It contains only a procedural command to Corporation Counsel. DOA's jurisdiction is established elsewhere in the Code in Section 214.130, which says that DOA has jurisdiction to hear all matters arising under all provisions of the Code regardless and notwithstanding any other provision of the Code. That establishes DOA's broad jurisdiction. With respect to the next issue, the City has home rule authority to administratively adjudicate distracted driving offenses. As a Supreme Court held in Camacho, the City has home rule authority to exercise any power and perform any function pertaining to its government and affairs, including the adjudication of ordinance offenses, even reportable ones. Here, the City has home rule authority to adjudicate distracted driving offenses because that pertains to public safety on City roads, which is plainly a local concern. This authority must be construed liberally and can only be limited by express statutory language. Plaintiffs do not argue that the City's home rule authority has been expressly preempted. Instead, they argue that the Vehicle Code and the Illinois Municipal Code impliedly preempt the City's authority. But as the Supreme Court held in Village of Bolingbrook v. Citizens Utility Company, there is no such thing as implied preemption in Illinois. Nevertheless, plaintiffs argue that several sections of the Vehicle Code interact to preempt the City's home rule authority. Those sections authorize the Secretary of State to revoke driving privileges and require courts to report convictions of certain traffic offenses to the Secretary. But just as the Supreme Court has held that there is no such thing as implied preemption, it has also held that there is no such thing as comprehensive scheme preemption. In other words, the mere existence of comprehensive state regulation does not preempt home rule authority. Moreover, Camacho forecloses the argument that Cities lack home rule authority to adjudicate reportable traffic offenses. In short, the Vehicle Code does not preempt the City's home rule authority in this area. Plaintiffs next argue preemption based on the legislative history of Section 12.12 of the Illinois Municipal Code. But the legislative history of an unambiguous statute cannot preempt home rule authority. Moreover, the legislative history of Section 12.12, including the House Parliamentarian's comments that the statute is permissive and not preemptive, was in front of the Court in Camacho, and the Court still ruled that Section 12.12 does not preempt home rule authority to adjudicate reportable traffic offenses. Put simply, plaintiffs have failed to demonstrate that anything in the Vehicle Code or the Illinois Municipal Code preempts the City's authority to adjudicate their offenses, so the City had home rule authority to do so. And finally, any similarity between the State and City distracted driving laws does not matter after Camacho. This Court does not need to determine whether the State's distracted driving statute was similar to the City's ordinance before 2014. As an initial matter, it's not clear why plaintiffs are seeking a ruling on similarity. Similarity doesn't matter in the context of 12.12. That statute says that the system of administrative adjudication set out in Division 2.1 of the Illinois Municipal Code cannot be used to adjudicate ordinance offenses which are similar to Vehicle Code offenses. But Camacho expressly held that Division 2.1 does not preempt the City's home rule authority to adjudicate ordinance offenses. So it does not matter whether the ordinance is similar to a Vehicle Code offense. This would not affect DOA's jurisdiction. Alternatively, to the extent plaintiffs argue that similarity matters for purposes of Section 230D, that ordinance is not jurisdictional as we have discussed. Again, it is simply a procedural command to Corporation Counsel and makes no mention of DOA's jurisdiction, which is established elsewhere in the Code. How do you address their law of the case argument? Yes, Your Honor. In the first time that this matter was up on appeal to this Court, this Court found that the two laws were not similar and that remains the law of the case today because it has not been expressly reversed by a higher court. So plaintiffs are barred from re-litigating this issue now. And what about the issue about in Part Tech 1 we cited Cotton Trucking, Inc., which was reversed by the Supreme Court? Yes, Your Honor, the Court did cite Cotton Trucking. And plaintiffs used that to argue that this Court was applying a narrow definition of the word similar. To the extent plaintiffs are still making a preemption argument in Section 3 of their brief, that would still require a narrow reading of the word similar. But regardless, it doesn't matter because this Court got it right the first time. These two laws are simply not similar. In Camacho, Joliet's ordinance set out a maximum weight and length for trucks. That was similar to the state statute, which also set out a maximum weight and length for trucks. Before 2014, the state statute regulated only sending, composing, or receiving electronic messages while operating a vehicle on the road, whereas the ordinance prohibited any use of a cell phone while driving. Those are simply two completely different categories of conduct, so this Court was right the first time to find that those were dissimilar laws. And unless the Court has any further questions, we ask this Court to affirm the ruling of the lower court, and we rest on our brief. Thank you. I'd like to address a few things that counsel said in their opening statement. First, counsel for the city said that only after Camacho was issued did we raise 230D. That's just not true. This is a summary judgment brief in the trial court dated September 29, 2023. In that brief, we literally have an entire section. It's not a footnote. It's not a throwaway sentence. It's an entire separate section that is entitled, The city's own municipal code prohibits the administrative adjudication of reportable violations. And in that section, we cite 230D. We say that it prohibits administrative adjudication, and we wrap that whole section up by saying in the end, even if the city is correct that state law poses no barrier to DOE's ability to administratively adjudicate its own municipal code prohibited from doing so. That was September 29, 2023. Camacho came out April 4, 2024. So this issue was raised in advance of Camacho, and as we stated earlier, it was then briefed again after Camacho in the trial court. The city's council also cited our complaint, referred this court to paragraphs 89 to 104 of our complaint, which dealt with state law. But they ignored the other paragraphs that literally dealt with municipal law. They just didn't cite them. They didn't talk about them, hoping they would just go away if they ignored them. But they're in the complaint. The city also said that the 230D was not briefed by the parties for a five-year period of dislitigation. Well, that's not surprising. During that five-year period, Gautam Trucking was the law of the land, and the city never contested that DOE-elect jurisdiction during that time period. Literally from the date of their motion to dismiss the ruling, all the way to their second motion for summary judgment five years later, they never contested that DOE-elect jurisdiction. Not in their first motion for summary judgment, and we cite that. I refer to pages seven to eight of our reply brief. We cite the record where the city did not contest DOE's lack of jurisdiction in their first motion for summary judgment, not at class certification, and not in this first appeal. They actually conceded. And we cite this on pages seven and eight of our reply brief. We cite the record where the city actually conceded at class certification that DOE lacked jurisdiction over these offenses. And we also cite the appellate brief in Protect 1, which is attached to our reply brief, where they say subject matter jurisdiction is not an issue on this appeal because the trial court did not pass upon it. So it's not surprising that this issue wasn't briefed for five years because jurisdiction was just simply not an issue. It was not contested. We never briefed the preemptive effect of Illinois state law during that five-year period of time, simply because it was not a contested issue. On prejudice, the city keeps talking about further litigation. That's just not true. We literally, this 230D was fully briefed by the parties. The city raised all their defenses to it at that time. They would not have to do another thing if an amendment was granted. And then they also talk about no injury, how if this would have went to the circuit court, they would have gotten fined anyways. Well, I'll refer this court to its initial decision, which found, we have to remember, these judgments were entered by a court that lacks subject matter jurisdiction. And this court found in Protect 1, that's what that appeal was all about, that that is an injury. When a broad judgment is entered against a party by a tribunal that lacks subject matter jurisdiction, that is an injury. And that's what this court held in Protect 1. And I'll finish my remarks with this one last statement. This lawsuit was brought when myself and Mr. Swetland worked for Mike Cherry's law firm, who's been a lawyer in the city for 50-plus years. Mr. Cherry recently retired earlier this year. And I worked with him for 25 years, from my first year of law school until his retirement. And Mr. Cherry once told me this. He asked me, what do you do when you're before a court, this was when I was a young lawyer just out of law school, what do you do when you're before a court that lacks jurisdiction? And he said, you throw a brick at it. Now, of course, he didn't mean that literally, or at least I don't think he did. I'm glad to hear that. I'm not contesting jurisdiction of this court, by the way. But what he meant was that a court without subject matter jurisdiction has absolutely no power to do anything. And the way he expressed this concept in such an extreme way is a reflection of how seriously Illinois takes subject matter jurisdiction. Now, I promise you, we have no intention of throwing bricks at DOA or this court. But in this case, DOA did enter judgments without subject matter jurisdiction. And the law in Illinois is clear and strong that those judgments can't stand. Thank you. A little tribute for you. At Canem Trucking, I was a trial judge. I believe you were a lawyer, wasn't you? Canem. I'm right. We went back and forth on Canem Trucking. That's right. Canem Trucking. That's where I remember the lawyers. All right. Then I was on the first case that you cited on POCAS. That's right. Well, we thank you for your arguments in a very interesting case. And we will stand adjourned. And you will get a decision from us in a reasonable length of time.